Patrick J. GALLAGHER, Plaintiff,

v.

CANON U.S.A., INC., Defendant.

No. 84 C 459.

United States District Court,
N.D. Illinois, E.D.

July 24, 1984.

Joseph R. Marconi, Douglas K. Morrison, Chicago, Ill., for plaintiff.

David C. McLauchlan, Mark A. Kreger, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Patrick Gallagher (Gallagher") has moved pursuant to Fed.R.Civ.P. ("Rule") 12(b) to dismiss the Amended Counterclaim of Canon U.S.A., Inc. ("Canon"). Gallagher contends Canon has failed (1) to allege standing to sue under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and (2) to plead fraud with sufficient particularity as required by Rule 9(b). For the reasons stated in this memorandum opinion and order, Gallagher's motion is granted and Canon's Counterclaim is dismissed without prejudice.

### Facts [1]

Gallagher's Complaint alleges Canon orally agreed to make Gallagher an authorized dealer of Canon office equipment, then breached that agreement, causing Gallagher to go out of business after he had spent over $250,000 opening a dealership. Canon assertedly breached its agreement by refusing to permit its majority-owned subsidiary Ambassador Office Equipment, Inc. ("Ambassador") to sell Gallagher Canon office equipment. Gallagher seeks not only reliance damages but also more than $1 million in lost profits and appreciation.

After this Court granted Gallagher's motion for a more definite statement of the original Counterclaim, Canon filed an Amended Counterclaim. Canon's Amended Counterclaim charges Gallagher participated in a pattern of racketeering activity in violation of RICO, alleging:

1. Gallagher formed and is responsible for the operation of various business enterprises engaged in interstate commerce, including Command Duplicating Services, Inc. in Illinois and Command Duplicating Services, Inc. in Nevada (Amended Counterclaim ¶¶ 5–7).

2. Gallagher and other agents of Gallagher's enterprises "unlawfully caused the transfer of substantial amounts of equipment and other assets of CANON or Ambassador to said business enterprises without reasonable compensation therefor and with the intent to defraud CANON and Ambassador" (*id.* ¶ 8).

3. Gallagher and other agents of Gallagher's enterprises "unlawfully received cash payments, reimbursements for personal expenses and other valuable benefits from Ambassador without CANON's knowledge or consent which were not related to any legitimate business purpose all with the intent to defraud CANON and Ambassador" (*id.* ¶ 9).

4. That scheme to defraud described in Amended Counterclaim ¶¶ 8–9 "was accomplished through the use of the United States mails in violation of 18 U.S.C. § 1341 and the wires in violation of 18 U.S.C. § 1343" (*id.* ¶ 10).

5. That scheme to defraud also "included the knowing transportation or receipt in interstate commerce by the above-stated business enterprises of photocopying machines and other goods and equipment belonging to CANON or Ambassador having a value in excess of Five Thousand Dollars ($5,000.00), in violation of 18 U.S.C. §§ 2314 and 2315" (*id.* ¶ 11).

6. Canon suffered damages in excess of $2 million because "Ambassador's ability to function as an effective dealer of Canon office equipment was seriously impaired, which has resulted in substantial damage to CANON in the form of lost sales of Canon brand office equipment, injury to CANON's business reputation and good will in the Chicago area, and a decline in the value of shares of Ambassador stock held by CANON" (*id.* ¶ 13).

Canon has thus added very little since this Court required it to provide a more definite statement. It has made some wording changes and has added allegations reported in the third and fourth numbered

---

**1.** For purposes of this motion, allegations of the Amended Counterclaim are assumed to be true and read in the light most favorable to Canon.

See *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

paragraphs above. That is not enough to escape dismissal without prejudice.

### RICO Standing

■ Canon urges it can bring a RICO claim because it is a "person injured" under 18 U.S.C. § 1964(c) ("Section 1964(c)"). Where however Canon seeks RICO standing simply as a shareholder of an injured corporation, it stretches RICO far beyond standing notions employed for any other type of action. Accordingly, the Amended Counterclaim does not survive unless it can be recast to allege only wrongs by which Canon was injured in its own right, not just through the value of its Ambassador stock.

In this case Canon makes clear it is affected by Gallagher's alleged behavior principally through Gallagher's effect on the value of Canon's subsidiary Ambassador. If a majority shareholder can sue under RICO solely for injury to the value of its stock, no logical reason exists for the unavailability of a like claim to a minority shareholder. It is axiomatic that the benefits of controlling a corporation do not include the right to profit from the legal rights of that corporation to the exclusion of minority shareholders. So the issue here is whether shareholders in general can sue under RICO directly for injury to the corporations in which they hold stock.

■ In the broadest sense of the term shareholders have been "injured in ... [their] property" under Section 1964(c) when they suffer a decline in the value of their stock. However the courts' willingness to enforce RICO's broad language (see *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.) (en banc), *cert. denied*, — U.S. —, —, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983)) does not require, as Canon seems to suggest, that RICO "be interpreted woodenly and without regard to [its] aim" (*id.* at 1356). In this case there is no indication whatever Congress intended courts to dis-

regard the corporate entity in interpreting Section 1964(c). Under state law the appropriate way for a shareholder to assert the rights of its corporation is by bringing a derivative action—*if* the corporation will not act for itself. See, e.g., *Poliquin v. Sapp*, 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (4th Dist. 1979).

Canon argues it is more than a "mere shareholder" and therefore can sue in its own name much as *Waste Recovery Corp. v. Mahler*, 566 F.Supp. 1466, 1468 (S.D.N.Y.1983) found in permitting a holding company to proceed under RICO. First it must be noted *Waste Recovery* proceeded (*id.*) on the same basis articulated here, that a shareholder "may not sue to redress damage done to him merely by virtue of a decline in value of his stock." Thus the court addressed the propriety of direct as opposed to derivative action by reference to pre-RICO cases—something Canon has not done here. More important, however, there appears to be no predicate (so to speak) for direct action in this case as there was in *Waste Recovery*. Canon denies any contractual relationship between Gallagher and Canon (Ans. ¶¶ 5–6), and its Amended Counterclaim does not provide the basis for assuming any breach by Gallagher of any duty owing directly to Canon.[2]

Canon of course disavows that its Amended Counterclaim is based principally on its status as a shareholder (Mem. 6):

Canon's relationship is far more substantial than that of a "mere" shareholder. Canon has alleged injuries to its business and property other than diminution in the value of its stock. As alleged in its Amended Counterclaim, Canon organized Ambassador for the purpose of acting as the sole distributor of Canon office equipment in the Chicago area. Gallagher's racketeering activity caused the virtual destruction of Ambassador's ability to function as an effective dealer of Can-

---

**2.** Canon correctly points out *Bennett v. Berg*, 685 F.2d 1053, 1058 (8th Cir.1982), *aff'd on rehearing*, 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) rejects the notion RICO re-

quires a contractual relationship between plaintiff and defendant. However where a plaintiff is injured only by reason of a decline in value of its stock, some basis for disregarding the corporate entity must be alleged and later proved.

on equipment, which in turn resulted in lost sales by Canon and damage to Canon's business reputation.

That argument however rests on the mistaken assumption Canon can recover for damages to its stock once it shows it is more than a "mere shareholder." Damage to the value of the Ambassador stock is not a proper subject of an individual claim in any event.[3]

■ Canon's allegations are not sufficiently precise to ascertain whether "lost sales by Canon and damage to Canon's business reputation" are the proper subjects of an individual action by Canon, rather than simply mirroring indirectly what has really been suffered by Ambassador. Moreover where a pleading is defective it is not this Court's duty to make such a determination in the first instance.[4] At the very least Canon must redraft the Amended Counterclaim so it alleges only wrongs actionable by direct rather than derivative action. Before it again submits any such redraft, however, Canon is directed to take a hard look at whether "the 'gravamen' of the pleadings alleges injury to the plaintiff upon an individual claim as distinguished from an injury which affects the shareholders as a whole." *Poliquin,* 72 Ill.App.3d at 480, 28 Ill.Dec. 615, 618, 390 N.E.2d at 977 (citation omitted).

### Rule 9(b) Particularity

■ In response to this Court's granting Gallagher's motion for a more definite statement, Canon filed an Amended Counterclaim instead of a statement. But the Amended Counterclaim's new allegations do not contribute the least bit to alleviating the vagueness on which Gallagher's motion was based and granted. Counterclaim ¶ 7 alleged in vague and conclusory fashion that Gallagher "caused the transfer of substantial amounts of equipment" from Ambassador. Amended Counterclaim ¶ 8 repeats that allegation almost verbatim. Canon's purported "more definite statement" contained in Amended Counterclaim ¶ 9 is actually a wholly separate allegation, equally vague, that Gallagher "unlawfully received cash payments" from Ambassador. Canon's only other additional allegations describe the relationship between Canon and Ambassador (Amended Counterclaim ¶ 4) and expand on the way Canon claims to have been injured by Gallagher's fraud (*id.* ¶ 13). Neither adds anything to the particularity (more accurately, lack of particularity) with which Canon has pleaded Gallagher's fraud itself.

Thus Canon's Amended Counterclaim could be stricken solely for failure to comply with this Court's order. But it must be added it is just not conceivable Canon has a reasonable basis for its claim, and yet can plead nothing more helpful or informative than that over a five-year period Gallagher or his agents "unlawfully caused the transfer of substantial amounts of equipment" to his enterprises (*id.* ¶ 8) and "unlawfully received cash payments, reimbursements for personal expenses and other valuable benefits" (*id.* ¶ 9). Canon's Amended Counterclaim does not even come close to providing a "brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants," as required by our Court of Appeals in *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir.1975).[5] It is

---

**3.** It must not be forgotten Ambassador is fully capable of suing Gallagher for the entire claim sought to be fragmented by Canon. Once Canon has opted for the corporate structure of a subsidiary distributor, it should not be free to ignore the juridical consequences of that structure simply because the spirit moves it.

**4.** Of course this Court is well aware of—and consistently applies—the liberal pleading rules favoring claimants confronted with Rule 12(b)(6) motions. But this is Canon's second chance, and if it wants to articulate a cause of action it owes Gallagher and this Court the duty

to present a less amorphous and more informative claim.

**5.** Canon notes *Beth Israel Medical Center v. Smith,* 576 F.Supp. 1061, 1071 (S.D.N.Y.1983) did not require plaintiffs to plead specific times, places and persons involved to support their allegations that defendants violated state and federal criminal statutes in executing their scheme to defraud. In that case however (*id.*) plaintiffs did plead "detailed allegations ... specifying the nature and operation of the scheme in which the defendants are alleged to have participated."

doubtful whether it meets even the minimal requirements of Rule 8, as modified in fraud claims by Rule 9(b).

### Conclusion

Gallagher's motion is granted and Canon's Amended Counterclaim is dismissed without prejudice. This is Canon's second attempt to file a legally sufficient counterclaim. Any third attempt may be subject to dismissal with prejudice even for defects that might not ordinarily be considered fatal.