Joseph C. WRIGHT, Plaintiff,

v.

**EVERETT CASH MUTUAL INSURANCE COMPANY; Lampman Claim Service, Inc.; Vic Kress Agency; John Does 1–50, Defendants.**

Civ. A. No. 86–77 ERIE.

United States District Court,
W.D. Pennsylvania.

June 20, 1986.

Michael Shaut, Cleveland, Ohio, for Wright.

Robert Hastings, Pittsburgh, Pa., for Lampman Claim Service Inc.

P. Brennan Hart, Pittsburgh, Pa., for Everett Cash Mut. Ins. Co.

Marcia H. Haller, Erie, Pa., for Kress Agency.

William Tighe, Pittsburgh, Pa., for V.P. Kress.

## OPINION

GERALD J. WEBER, District Judge.

This is an action arising out of the denial of a fire insurance claim. Plaintiff alleges that he bought insurance to cover his dwelling contents and the related private structures on the premises in 1966 from Vic Kress. Everett Cash Mutual Insurance Company issued the insurance. The insurance was still in effect when Wright filed a claim for $4,300.00 after a garage was destroyed by an arson fire on October 21, 1984. Everett Cash Mutual assigned the claim to Lampman Claim Service for adjustment. The claim was denied on the basis that the garage had been used for business purposes (storage) by a third-party, and, therefore was excluded from coverage by reason of a clause in the policy. Plaintiff avers that Vic Kress knew or had reason to know that plaintiff was renting a portion of his garage, and that Vic Kress represented to plaintiff at some point in time that he believed coverage was available for private related structures whether or not they were rented.

After the claim was denied, plaintiff initiated an action in Crawford County Common Pleas Court alleging Racketeer Influenced and Corrupt Organizations Act (RICO) violations as well as common law fraud, breach of contract and bad faith denial of a fire insurance claim.

Defendants removed the action to federal district court based on federal question jurisdiction pursuant to the RICO claims. Thereafter various motions to dismiss were filed by defendants. These motions have been fully briefed by the parties, and await this Court's determination.

Following a preliminary discussion of the pending issues with counsel at a conference on May 16, 1986, and careful consideration of the issues raised in the briefs, we will now determine these matters.

■ Defendant Vic Kress has filed a Motion to Dismiss and/or Strike requesting that this court strike service on Vic Kress Agency, as no such agency or corporation exists. In the motion, Victor P. Kress, an individual admits he was served with a copy of the complaint. Plaintiff answers that he will amend his complaint to reflect the correct name of the party defendant as Victor P. Kress, the individual who has been served herein and who was involved in the activities in question. We believe that this is the appropriate remedy under the circumstances and we would allow such amendment, denying Kress' Motion to Dismiss.

Defendants Everett Cash Mutual and Lampman Claim Service have filed essentially identical Motions to Dismiss and/or to Strike raising a number of issues that may be dispositive or partially dispositive of the claims asserted herein. We will consider these individually.

## THE RICO CLAIMS

■ Defendants first assert that plaintiff has failed to allege a distinct culpable "person" and "enterprise" under the RICO counts as required by *B.F. Hirsch v. Enright Refining Company, Inc.,* 751 F.2d 628 (3d Cir.1984). We agree and have previously held that such a distinction is necessary. *See Tarasi v. Dravo Corporation,* 613 F.Supp. 1235 (W.D.Pa.1985). Defendants request that we dismiss the RICO claims on that basis as we did in *Tarasi.* In support of this recommendation, defendants consider various scenarios which might be alleged by plaintiffs and conclude that none of the possible allegations would

present any true distinction between the RICO "person" and "enterprise". Defendants base this conclusion in part on the premise that Vic Kress and Lampman Claim Service cannot be separately distinguished from Everett Cash Mutual in order to establish a separate "person" and "enterprise" under a § 1962(c) RICO claim since an agency relationship exists. This conclusion is based on too broad a reading of our holding in *Tarasi* and of the Third Circuit's holding in *B.F. Hirsch.* These cases dealt with the "singularity" of a corporation and its officers and employees for § 1962(c) purposes, and refused to allow circumvention or distorting of this principle through a respondeat superior argument. We do not believe that these cases stand for the principle that legally separate entities or individuals who act as an agent for a corporation somehow merge into a singular entity with that corporation for § 1962(c) purposes simply because of the existence of an agency relationship. Since plaintiff argues in its brief that Everett Cash Mutual is the "enterprise" and either Vic Kress or Lampman Claim Service are the "person" depending on the particular RICO claim in question, we believe this defect would be curable through amendment.

Defendants' next objection, however, appears to be dispositive. Defendants argue that plaintiff has failed to plead "a pattern of racketeering activity" necessary to state a RICO claim.

Under 18 U.S.C. § 1962(c), a plaintiff must plead and prove a pattern of racketeering activity. *Chambers Development Company v. Browning-Ferris Industries,* 590 F.Supp. 1528, 1536 (W.D.Pa.1984). Section 1961(1) of Title 18 defines "racketeering activity" to include a long list of specific federal and state offenses, such as mail fraud under 18 U.S.C. § 1341. A "pattern of racketeering activity" is defined by § 1961(5) to *require at least* two acts of racketeering activity, within a ten year period, one of which occurred after the effective date of the RICO statute. The statute itself gives no further specific assistance in determining exactly what con-

stitutes a pattern of racketeering activity in any given case.

■ Justice White's footnote in the U.S. Supreme Court's *Sedima* case provides an informative analysis of just what is meant by a "pattern" for RICO purposes by examining the overall statutory context and legislative history as follows:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern ..." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665 ...

*Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, ——, n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

While we realize that Justice White's comments are dicta and therefore not controlling, we believe that they provide a

reasonable interpretation of the statute. With the *Sedima* dissenting Justices, many district courts have become increasingly concerned that an overbroad reading of the statute has resulted in an explosion of RICO cases which present little if any resemblance to the type of activity Congress intended to target under the statute. We adopt Justice White's analysis [1] as a logical adherence to the original legislative intent.

■ In examining plaintiff's complaint, it is clear that this action arose out of the denial of a single fire insurance claim made on a single insurance policy owned by one individual, Joseph Wright.[2] In attempting to establish a "pattern of racketeering activity," plaintiff relies on his allegations of the annual mailing of misrepresentative billing statements and policy renewals. He also argues in his brief that "continuity plus relationship" is "readily demonstrable ... with three separate 'persons' involved in the commission of the 'predicate acts'." While we appreciate counsel's efforts on his clients behalf, we disagree. In the context of this case, the annual mailing of billing statements and policy renewals to Joseph Wright constitute ministerial acts performed in execution of a single unified transaction in which plaintiff obtained insurance coverage. Accepting plaintiff's allegations as true for purposes of this motion, we believe that the acts alleged amount to a single fraudulent transaction, lacking the necessary "pattern of racketeering activity" for a RICO violation.[3] Accordingly, we will dismiss plaintiff's RICO claims on that basis.

## PENDANT JURISDICTION

■ Defendants also argue that the dismissal of plaintiff's RICO claims divests this court of pendant jurisdiction over plaintiff's state law claims since no diversity exists between the parties. In evaluating our discretionary power to exert pendant jurisdiction over the remaining state law claims, we consider several factors. *United Mine Worker's of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There is no doubt that all of plaintiff's claims arise from the same nucleus of operative facts. However, while we do not suggest that plaintiff's RICO claims were in any way frivolous[4], our

1. Other district courts have followed the Supreme Court's dicta in this regard. *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 833 (N.D.Ill.1985).

2. Although plaintiff alleges that he is bringing this action "individually and on behalf of all other persons similarly situated" in his complaint (see paragraphs 18 and 47), he makes the following representations in his brief:

    This case is not intended to be brought as a class action at this time. If subsequent discovery should demonstrate the advisability of such an action, an appropriate motion to amend the Complaint to form it as a class action will be filed with the Court. Any current pleadings which could possibly be construed as alleging a class action should not be so construed.

    Plaintiff's Brief in Opposition, p. 3–4.

3. For other cases addressing what constitutes a "pattern of racketeering activity," *see Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985) (two mailings made in connection with a phony subcontract under which kickbacks were later made failed to establish "pattern of racketeering activity"); *Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985)

(distinguishing *Northern Trust;* "pattern of racketeering activity" does not require a pattern of fraudulent schemes, rather one open-ended scheme may involve a sufficient number of independent criminal episodes, transactions somewhat separated in time and place, may establish the necessary "pattern"); *Rojas v. First Bank National Asso.*, 613 F.Supp. 968, 971, n. 1 (E.D. N.Y.1985) (physician alleging RICO violations against a bank for fraudulently inducing him to personally guarantee loans made to his corporation, through two discrete transactions, fell short of establishing a "pattern."); *Professional Assets Management Inc. v. Penn Square Bank, N.A., et al.,* 616 F.Supp. 1418 (W.D.Okl.1985) (preparation of audit report by accounting firm, although it involved numerous constituent actions, was a single unified transaction and not a "pattern."); *Commonwealth of PA v. Derry Construction Co., Inc.*, 617 F.Supp. 940 (W.D.Pa. 1985) (alleged acts of mail fraud in furtherance of antitrust conspiracy represent a pattern of racketeering activity).

4. Clearly the RICO issues raised and considered herein are significant legal issues which have not yet been decided as a matter of binding precedent and on which courts have reached differing conclusions.

dismissal of them at this early stage on the pleadings certainly reflects on their substantiality and weighs against our exercising pendant jurisdiction. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976). We note that this case was originally brought in state court, that it now consists solely of state law issues and that the state forum is presumably more convenient for the parties. Since we find no element of unfairness to the plaintiff, we will dismiss the remaining state law claims.