CITIZENS SAVINGS ASSOCIATION, on its own behalf and derivatively; Colonial Savings Association, on its own behalf and derivatively; W–C Service Corporation, on its own behalf and derivatively; and Citizens Savings Association, as successor in interest by way of merger on behalf of Citizens Savings Association and Colonial Savings Association, Plaintiffs,

v.

Barry N. FRANCISCUS; Vivian K. Spiese, Executrix of the Estate of Lloyd Kline, deceased; Mary B. Rothrock; Grover C. Artman; Frederic P. Bromer; Albert H. Spinner; Linda S. Kauffman; James I. Bovender; D. Clyde Long; Preston L. Horn; William Logeman; Guy U. Sheffer; Charles C. Dietz; John M. Boddington; Grover Fred Artman, II; McKonly & Co.; and McKonly & Asbury, Defendants.

Civ. No. 85–1892.

United States District Court, M.D. Pennsylvania.

Dec. 30, 1986.

154

Andrew Hailstone, Bruce L. Morgan, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., for plaintiffs.

James M. Scanlon, Scanlon, Howley, Scanlon & Doherty, Scranton, Pa., for McKonly & Co. McKonly & Asbury.

Bruce E. Cooper, Harrisburg, Pa., for Franciscus, Rothrock, Artman, Bromer, Spinner, Kauffman, Bovender, Long, Horn, Logeman, Sheffer, Dietz & Artman, II.

Gwendolyn Mosley, Dist. Atty. Gen., Andrew S. Gordon, Dist. Atty., Office of Atty. Gen., Litigation Section, Harrisburg, Pa., for Pa. Dept. of Banking.

John P. Hohenadel, Lancaster, Pa., for Vivian K. Spiese.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiffs instituted this action on December 30, 1985. The named defendants were allegedly officers and directors of Colonial Savings Association ("Colonial"), accountants for Colonial and the state regulatory agency[1] for banking. Plaintiffs averred that Citizens Savings Association ("Citizens") and Colonial merged on December 29, 1983 and that Citizens subsequently discovered delinquencies and related problems with regard to certain "nation-

1. By Order dated April 21, 1986, the Department of Banking for the Commonwealth of Pennsyl- vania was dismissed from this case.

wide" loans.[2] Plaintiffs claimed that defendants violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, by fraudulently misrepresenting the status of the nationwide loans during merger negotiations. Specifically, plaintiffs maintained that defendants committed indictable offenses under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. 1343 (wire fraud). Plaintiffs also asserted various pendent claims based upon state law.

On September 19, 1986, defendants Franciscus, Rothrock, Grover C. Artman, Bromer, Spinner, Kauffman, Bovender, Long, Horn, Logeman, Sheffer, Dietz, Boddington and Grover Fred Artman, II filed a Motion for Summary Judgment, a Statement of Material Facts Presenting No Genuine Issue for Trial and a Brief in Support of their dispositive motion. Said defendants also submitted a Memorandum on October 6, 1986. They asserted in their Statement of Material Facts and in attached affidavits that defendants Boddington and Grover Fred Artman, II were never officers or directors of Colonial as averred in plaintiff's Complaint and are thus not proper defendants in this action. In addition, they maintained that "[p]laintiffs have no evidence to support the charges that each of the Defendants herein was guilty of two acts of racketeering activity." *See* defendants' Statement of Material Facts at ¶ 11.

These defendants reiterated the latter proposition in their Brief in Support of their summary judgment motion when they stated:

> With respect to the officers and directors other than Franciscus, Plaintiffs have no evidence. Despite the detailed nature of the Interrogatories served upon them, Plaintiffs have failed to supply facts as to what representations were made, the specific manner in which the representations were false and the facts that support an inference of fraud by each Defendant. The Plaintiffs are required to show the nature of each individual Defendant's participation in the alleged fraud including facts which constitute scienter. They must show which documents were fraudulent and how. There is absolutely no indication regarding the roles of the various Defendants in the preparation and dissemination of information and how such information was fraudulent (citation omitted).

> Not a single representation or omission is attributed to these Defendants, much less a date on which the representations or omissions occurred.... Defendants are group[ed] together indiscriminately with an inference that each Defendant is responsible for the acts of the others.

*See* Document 28 of the record at p. 13. Defendants further argued that plaintiffs failed to plead fraud with particularity, to aver the element of enterprise, to plead a pattern of racketeering with specificity and to identify the subsections of 18 U.S.C. § 1962 upon which their RICO claim is based. A main theme of defendants' argument was that plaintiffs should not be allowed to institute a RICO action without any basis for it and then attempt to search for a basis through discovery. Defendants also requested sanctions under Rule 11.

Plaintiffs filed a Brief in Opposition to defendants' dispositive motion on October 17, 1986. They indicated that the predicate acts upon which they based their RICO claim were the transmission by mail of a series of reports, prepared by defendant Kauffman, to the Federal Home Loan Bank Board as well as a series of reports by defendant Franciscus to Citizens during merger negotiations. Plaintiffs submitted affidavits which detailed the alleged misrepresentations contained in the above-noted reports. Finally, they argued that defendants' summary judgment motion was premature since plaintiffs' interrogatories and requests for production of documents are still outstanding.

Defendants submitted a Reply Brief on October 29, 1986. They reiterated their position as presented in their earlier brief, adding that the matters set forth in their Statement of Material Facts should be deemed admitted under Local Rule 401.4

---

**2.** These loans are eleven (11) in number and involve expected losses totalling $3,600,000.00

since plaintiffs did not contest said Statement.

Meanwhile, defendant Spiese, executrix of the estate of Lloyd Kline, filed a Motion for Summary Judgment, a Brief in Support thereof and a Statement of Material Facts on October 3, 1986. She incorporated the summary judgment motion and supporting briefs of her fellow defendants and added that she was insulated from liability in this action because Mr. Kline's estate had been closed on March 20, 1984. Plaintiffs submitted a responsive Statement of Material Facts, a Brief in Opposition and an Affidavit on October 17, 1986.

This matter is now ripe for disposition. The court will deny defendants' summary judgment motions.[3]

### DISCUSSION

When examining a motion for summary judgment, the court must view all facts in the light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402 (3d Cir.1981). If there exists a genuine issue as to any material fact, summary judgment must be denied. Fed.R.Civ.P. 56(c). Against this background, the court will examine the requisite elements for establishing a "pattern of racketeering activity" under 18 U.S.C. § 1962.[4]

The definitional section of RICO provides that a pattern of racketeering "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court further defined the pattern requirement in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Court stated:

> The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern."

The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the senate bill, after quoting this portion of the Report, pointed out to his colleagues that '[t]he term "pattern" itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern....' 116 Cong.Rec. 18940 (1970) (statement of Rep. Poff) (RICO 'not aimed at the isolated offender'); House Hearings, at 665. Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. *Cf. Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975). *Id.* 105 S.Ct. at 3285 n. 14.

Courts have widely differed in their interpretations of the Supreme Court's "continuity plus relationship" test for a pattern of racketeering.[5] Some courts have held that a RICO violation requires two separate schemes, episodes or transactions[6] involving criminal activity; others have ruled

---

**3.** To date, McKonly & Co. and McKonly and Asbury are the only defendants who have not submitted a pretrial dispositive motion.

**4.** As noted later in this Memorandum, plaintiffs have specified that they are proceeding under subsection (c) of 18 U.S.C. § 1962.

**5.** As revealed later in this Memorandum, the Eastern, Middle and Western Districts of Penn-

sylvania have each produced conflicting decisions which attempt to define "pattern of racketeering activity."

**6.** The terms "schemes", "episodes" and "transactions" will be used interchangeably throughout the remainder of this Memorandum.

that two related acts which arise out of the same scheme may establish a pattern of racketeering.

The post-*Sedima* dichotomy over what constitutes a pattern of racketeering activity has risen to the forefront of this case, and the parties have concentrated upon this issue in their briefs. For example, defendants stated, "The fact that there may have been numerous misrepresentations in connection with this single transaction, the merger of Citizens with Colonial would not create a pattern under RICO." *See* Document 28 at p. 16. Defendants later added, "Even had the Plaintiffs been able to establish that each of the Defendants had actually been engaged in separate acts of mail fraud to effectuate this merger, these acts committed in furtherance of one scheme would not constitute a viable RICO cause of action." *See* Document 44 at p. 4. Defendants' position, then, is that the predicate acts for a RICO claim must occur in different schemes and that all of the alleged predicate acts in this action took place during one episode, *i.e.*, the merger negotiations between Citizens and Colonial.

■ Although the Court of Appeals for the Third Circuit in *United States v. Grayson*, 705 F.2d 278, 290 (3d Cir.1986), and *Malley-Duff Associates, Inc. v. Crown Life Co.*, 792 F.2d 341, 353 n. 20 (3d Cir.), *cert. granted*, —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986), expressly refrained from defining the parameters of a pattern of racketeering, some district court decisions within the Third Circuit support defendants' interpretation of the Supreme Court's "continuity plus relationship" test. *See Maryland National Bank v. Dauphin Deposit Bank & Trust Co.*, 647 F.Supp. 908 (M.D.Pa.1986) (Rambo, J.) (multiple fraudulent acts in a single fraudulent scheme cannot constitute a pattern); *Rich Maid Kitchens, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 641 F.Supp. 297 (E.D.Pa. July 18, 1986) (Cahn, J.) (RICO plaintiff must show that defendant has performed criminal activities in the past or engaged in criminal activities elsewhere, and one fraudulent scheme, even though it may contain more than one fraudulent act, is insufficient to show a pattern of racketeering); and *Wright v. Everett Cash Mut. Ins. Co.*, 637 F.Supp. 155 (W.D.Pa. June 20, 1986) (Weber, J.) (annual mailing of misrepresentative insurance billing statements and policy renewals constituted the execution of a single unified transaction and did not amount to a pattern of racketeering activity). *See also Kredietbank, N.V. v. Joyce Morris, Inc.*, No. 84–1903, slip op. (D.C.N.J. Jan. 9, 1986) [Available on WESTLAW, DCT database]. Plaintiffs, in turn, argued that two separate criminal episodes, each involving the status of the nationwide loans, are present in this case—one involving a series of fraudulent misrepresentations made by defendants to state and federal regulatory agencies in periodic reports required by law and another involving fraudulent misrepresentations made by defendants to Citizens during merger negotiations. Plaintiffs also contended that a pattern of racketeering activity does not require a multiplicity of criminal transactions.

Plaintiffs' latter observation is supported by case law from each district within Pennsylvania. In fact, it is the established position of the undersigned judge that two or more related acts arising out of the same criminal scheme may constitute a pattern of racketeering. In *Metropolitan Internat'l, Inc. v. Alco Standard Corp.*, 657 F.Supp. 627, 634 (M.D.Pa.1986) (Nealon, C.J.) (*quoting Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1170 (S.D.N.Y.1985)), this court stated:

> Although it is true that two isolated acts of racketeering activity do not constitute a pattern, ... when two acts which related *to each other* and arise out of the same scheme are alleged, the requirement of pleading a 'pattern of racketeering activity' has been met.

The court noted that "it is for Congress and not this court to limit the use to which RICO has been put." *Id.* at p. 15. *See also Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. Oct. 23, 1986) (the proposition that the predicate acts must always occur as part of separate schemes in order to satisfy the continuity aspect of the pat-

tern requirement excessively focuses on continuity and cannot be accepted as a general rule); *Perfection Corp. v. Dresser Industries, Inc.,* 641 F.Supp. 782 (W.D.Pa. Aug. 25, 1986) (Weber, J.) (one episode of racketeering activity equals one act involving criminal activity, and since plaintiff alleged two prohibited acts separated in time and space, even though carried out in the same transaction and for the same purpose, she presented sufficiently isolated and distinct events to be considered separate acts, and she thus survived a motion to dismiss; the court noted its decision in *Wright v. Everett Cash Mut. Ins. Co., supra,* but did not apply the rationale utilized therein); *Penturelli v. Spector Cohen Gadon & Rosen,* 640 F.Supp. 868 (E.D.Pa. July 16, 1986) (Huyett, J.) (although only one transaction or scheme was alleged in connection with the sale of interests in mining operations, complaint which covered several racketeering acts undertaken to entice plaintiff to enter the transaction adequately alleged a pattern of racketeering under RICO); and *United States v. Freshie Co.,* 639 F.Supp. 442 (E.D.Pa. June 26, 1986) (Newcomer, J.) (neither the statutory language nor the language in *Sedima* suggests that a pattern requires different criminal episodes). The court now reaffirms its holding in *Metropolitan Intern'l v. Alco Standard Corp., supra,* that two or more related acts which arise out of the same transaction may establish a pattern of racketeering.

■ The court points out, however, that any examination to determine if a pattern exists involves several factors other than the number of criminal transactions present. Indeed, to say that the test for a pattern of racketeering is whether at least two criminal episodes are present is an oversimplistic response to a complex inquiry. This court chooses to follow the middle course outlined in *Morgan v. Bank of Waukegan, supra,* which focuses attention on the interplay between a number of relevant factors, including: the number and variety of the predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of

distinct injuries. The court in *Morgan* noted:

> [T]he mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement. The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative.

804 F.2d at 975–76. .

■ In the present case, plaintiffs rely upon fifteen documents to support their RICO claim, all of which, according to their allegations, were transmitted through the mail, were relied upon by plaintiffs during merger negotiations and fraudulently misrepresented the status of the nationwide loans. Twelve of these documents are monthly reports submitted by defendant Kauffman to the Federal Home Loan Bank Board from January 1983 through December 1983. Two other documents are reports furnished by defendant Franciscus to Citizens on or about September 11, 1983 and September 16, 1983. The final document is a report from defendant Franciscus to Citizens but which is not dated or signed. In analyzing this situation under the factors presented in *Morgan,* it is apparent that if plaintiffs' accusations are true, there may be at least fifteen predicate acts of mail fraud concerning the nationwide loans which occurred over the course of a year, with two separate recipients and two potential criminal episodes (*i.e.,* a scheme to defraud the Federal Home Loan Bank Board and a distinct scheme to defraud Citizens).

In view of the foregoing discussion, the court determines that plaintiffs have presented sufficient evidence of a possible pattern of racketeering to withstand defendants' summary judgment motion at this time on this issue.

The remaining grounds asserted by defendants fail to persuade the court that summary judgment in their favor is warranted at this time. For example, defend-

ants complained that plaintiffs did not indicate the subsections of 18 U.S.C. § 1962 under which they were proceeding, but in their Brief in Opposition, plaintiffs subsequently specified that their RICO claim is based upon 18 U.S.C. § 1962(c). *See* Document 39 at p. 4.

■ Moreover, defendants claimed that plaintiffs failed to plead fraud with particularity or the element of enterprise.[7] Plaintiffs' Complaint and their Brief in Opposition describe the alleged fraudulent acts with sufficient particularity. 18 U.S.C. § 1962(c) makes it unlawful for any person "employed by or associated with any enterprise" engaged in interstate commerce to conduct that enterprise's affairs through a pattern of racketeering. Only the individual employees of the enterprise, not the enterprise itself, can be held liable under § 1962(c). *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984); and *Roche v. E.F. Hutton & Co., Inc.,* 603 F.Supp. 1411 (M.D.Pa.1986) (Nealon, C.J.). Enterprise is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Although plaintiffs may not have employed the specific label "enterprise," they have clearly presented evidence of the existence of the enterprise element in this action, *i.e.,* Colonial Savings Association. *See Eaby v. Richmond,* 561 F.Supp. 131 (E.D.Pa.1983) (Troutman, J.); and *Allied Services for the Handicapped, Inc. v. Walters,* No. 86–0864, slip op. at 7–9 (M.D.Pa. Nov. 24, 1986) (Kosik, J.).

■ The summary judgment motion of defendant Spiese will likewise be denied. Both plaintiffs and defendant Spiese cite the decision in *Ohio v. Union Trust Company,* 137 Pa.Super. 75, 8 A.2d 476 (1939), for the proposition that a claimant may bring an action against a personal representative who has not been discharged, regardless of whether or not the assets of the estate have been distributed and regardless of the collectibility of any judg-

ment, but that a discharge insulates the personal representative from future liability. The dispute in the present case appears to focus on what constitutes a "discharge."

Although defendant Spiese established that the estate of Lloyd Kline was closed on March 20, 1984 and that a release signed by his heirs was filed on March 30, 1984, she has not shown that she filed a final accounting for confirmation or that she was formally discharged from her fiduciary duties by the appropriate court. Plaintiffs contend that Spiese is not relieved of future liability absent the filing of an accounting or a formal discharge, and she has not provided the court with authority to the contrary. It may be that Spiese believes that the filing of a release constitutes a formal discharge by the court. The two are not the same, as evidenced by 20 Pa.C.S.A. § 3532(c) which states that a court's acceptance of a release "shall not be construed as court approval of any act of administration of distribution therein reflected." Moreover, 20 Pa.C.S.A. § 3184 makes confirmation of the final accounting a prerequisite to a discharge from future liability by the court. In the absence of a formal discharge, then, it appears that defendant Spiese may be held liable to plaintiffs in her capacity as personal representative for Lloyd Kline.

■ Finally, the court does not agree with defendants' assertion that plaintiffs instituted this suit without any basis and are now searching for a foundation for their action through discovery. Plaintiffs have presented evidence that an association to defraud them as to the status of the nationwide loans may have existed. The problem from plaintiffs' perspective is identifying the members of this association, and discovery is an appropriate tool for this purpose. To date, plaintiffs have shown that only two of the named defendants may have participated in this association; defendant Kauffman who prepared the reports to the governmental regulatory body and defendant Franciscus who, on behalf of

7. Defendants did not develop detailed arguments in their briefs regarding these two claims.

Colonial, conducted the merger negotiations with Citizens. The court will refrain from granting summary judgment at this point—while discovery is still being sought—in favor of any of the various defendants.

■ The court expects, however, that upon completion of discovery, plaintiffs will act in good faith and will, if necessary, discontinue this suit as to any defendants concerning whom there is no evidence of involvement in the requisite predicate acts. In order to sustain a RICO claim, a plaintiff must present proof that *each* defendant was in some manner involved in the performance of the requisite predicate acts. *See Beck v. Cantor, Fitzgerald & Co., Inc.,* 621 F.Supp. 1547 (N.D.Ill.1985); and *Eaby v. Richmond, supra.* The court questions, for example, how defendants Boddington and Grover Fred Artman, II could have been involved in any of the alleged predicate acts since they were never directors or officers of Colonial.[8]

If plaintiffs fail to narrow the scope of their lawsuit as the evidence may warrant at the conclusion of discovery, any defendants who maintain that there is insufficient evidence linking them to the requisite predicate acts may submit a summary judgment motion. At that time, the court will require plaintiffs to set forth each act of mail fraud or wire fraud with the specificity demanded by the court in *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985),[9] and to detail each defendant's possible involvement therein.

An appropriate Order will enter.

ORDER

NOW, this 30th day of December, 1986, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Motion for Summary Judgment of defendants Franciscus, Rothrock, Grover C. Artman, Bromer, Spinner, Kauffman, Bovender, Long, Horn, Logeman, Sheffer, Dietz, Boddington and Grover Fred Artman, II is denied.

(2) The request for sanctions under Fed. R.Civ.P. 11 of the above-named defendants is denied.

(3) The Motion for Summary Judgment of defendant Spiese, Executrix of the Estate of Lloyd Kline, is denied.

---

**8.** Under Local Rule 401.4, it is deemed admitted that defendants Boddington and Grover Fred Artman, II were never directors or officers of Colonial since plaintiffs have not contraverted any of the facts set forth in defendants' Statement of Material Facts. The conclusions of law contained in that document, however, such as the statement in paragraph 12 that "[p]laintiffs have no evidence to establish a pattern of racketeering activity on the part of the defendants herein," will not be deemed admitted.

**9.** The court in *Conan Properties* set forth the following list of information which plaintiffs must supply when bringing a RICO claim based on fraud:

1. Precisely what statements were made in what documents or oral representations or what omissions were made;

2. The time and place of each such statement and the person responsible for making (or in case of omissions, not making) the same;

3. The content of such statements and the manner in which they misled the plaintiffs; and

4. What the defendants "obtained as a consequence of the fraud."